23CA0891 TCPA v Young 09-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0891
El Paso County District Court No. 21CV31668
Honorable William B. Bain, Judge

---

TCPA Litigator List,

Plaintiff-Appellant,

v.

Adam Young; Tubmanburg Limited, a Bahamas corporation a/k/a Ringba; and
Ringba, LLC, a Delaware limited liability company,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

---

Allen Vellone Wolf Helfrich & Factor P.C., Patrick D. Vellone, Matthew M. Wolf,
Vandana S. Koelsch, Jordan Factor, Denver, Colorado, for Plaintiff-Appellant

Lewis Roca Rothgerber Christie LLP, Kendra N. Beckwith, Caitlin C. McHugh,
Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, TCPA Litigator List (plaintiff or the company), appeals the district court's order granting summary judgment in favor of defendants, Adam Young (Young); Tubmanburg Limited, a/k/a Ringba (Tubmanburg); and Ringba, LLC (collectively Ringba or defendants).  Plaintiff also appeals the court's two sanctions orders. We affirm.

## I.     Background

¶ 2     Michael O'Hare (O'Hare) created the plaintiff company in March 2019.  Plaintiff's business model compiles and tracks telephone numbers of individuals who are likely to file lawsuits under the Telephone Consumer Protection Act (the Act).  The company has a subscription service that allows subscribers to scrub their telephone lists by removing those names who, if called by the subscriber, may initiate a lawsuit.

¶ 3     Young founded and is the current CEO of Ringba. Tubmanburg was Ringba's owner until January 1, 2021.  Ringba is an inbound call tracking service.  In October 2019, Ringba began to contemplate incorporating a scrubbing service that also included names of those who might file a lawsuit under the Act.  The product

1

would be an ancillary service to other analytic and tracking services Ringba already provided. To accomplish this, Ringba investigated the possibility of outsourcing this service, creating its own software, or purchasing an existing organization dedicated to this service. In April 2020, Ringba was actively researching its options including hiring a third-party consultant to develop a research strategy to compile information.

¶ 4 As part of its research, Young purchased a subscription with plaintiff on April 5, 2020 and downloaded the company's Litigator List (List). Five days later, an agent of Young's contacted plaintiff to discuss a possible acquisition of the company. Plaintiff and Tubmanburg, Ringba's owner at the time, signed a mutual nondisclosure agreement (NDA) related to the discussions on April 10, 2020. Neither Young nor Ringba were signatories to the NDA. After the discussions, Ringba offered to purchase the company for $70,000. Plaintiff rejected the offer and there were no further negotiations.

¶ 5 In July 2020, Ringba launched its own scrubbing service called TCPA Shield that incorporated many of the names from

plaintiff's List. After O'Hare found out about TCPA Shield, plaintiff filed this lawsuit in October 2021. The company alleged that Ringba manipulated the company's website by changing the date range to enable Young to download the complete List and use the "private information and proprietary listings" for Ringba's own product in violation of the company's terms and conditions.

¶ 6 Plaintiff asserted five claims for relief, with all except one asserted against all defendants: (1) breach of contract (against Tubmanburg); (2) unjust enrichment; (3) fraud; (4) civil conspiracy; and (5) violation of the Colorado Uniform Trade Secrets Act.

¶ 7 Throughout the litigation, the parties had numerous discovery disputes. Plaintiff retained Jason Frankovitz (Frankovitz) as a computer programmer and software expert. Frankovitz opined in a sworn declaration that Young downloaded the complete List by bypassing the website interface "through direct manipulation of the parameters in the URL" because the web application had a date restriction feature.

¶ 8 Ringba filed a motion for summary judgment on all claims. On May 8, 2023, the district court granted partial summary

judgment in favor of Ringba on all claims except the trade secrets claim, concluding that "there is just enough evidence for a jury to conclude that the list was a trade secret."

¶ 9 Before and after the court granted summary judgment, there were more discovery disputes. Most of them involved Ringba's repeated efforts to obtain plaintiff's source code for the website as it existed on April 5, 2020, when Young downloaded the List. To that end, Ringba filed two motions to compel and two motions for sanctions, including the sanctions motion terminating the case. The court granted the motions following hearings that revealed (1) a person could download the complete List from plaintiff's website without any manipulation of a date range restriction; (2) a person could download the List from plaintiff's website without having to agree to the company's terms and conditions; (3) plaintiff withheld documents that showed that Young had "permission" to download the List; and (4) plaintiff possessed substantial portions of this information throughout litigation. As a result, the district court terminated the case.

¶ 10    Plaintiff appeals contending that the district court (1) abused

its discretion by prohibiting Frankovitz from testifying and

terminating the action as a sanction and (2) erred by granting

summary judgment on its claims for breach of contract and fraud.[1]

## II.    Sanctions

¶ 11    Plaintiff asserted two theories for its claims.  Both parties

retained experts who opined on the manipulation of website theory

and agreement to the terms and conditions theory.  As discussed

above, plaintiff disclosed Frankovitz and defendants retained Dr.

Mark Gianturco (Gianturco).  Both experts were deposed and both

were expected to testify at trial.

¶ 12    Plaintiff contends that the district court abused its discretion

when it terminated the action for belated discovery productions that

were timely, cumulative of other evidence, and made available to

and declined inspection by Ringba.  We disagree.

---

[1] Plaintiff appeals the summary judgment order on the breach of contract and fraud claims.  Because plaintiff does not reassert the other claims on appeal, we deem them abandoned.  *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

A.    Standard of Review and Applicable Law

¶ 13    We review a district court's imposition of sanctions under C.R.C.P. 37 for an abuse of discretion. *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009). A district court "abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair," *id.*, or a misapplication of the law, *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008).

¶ 14    A party who fails to disclose information required by C.R.C.P. 26 without "substantial justification" may be subject to sanctions. C.R.C.P. 37(c)(1). C.R.C.P. 37 provides a variety of sanctions a district court may impose for noncompliance with disclosure. *Pinkstaff*, 211 P.3d at 702. "Generally, sanctions under C.R.C.P. 37 'should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party.'" *Id.* (quoting *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo. 1987)). The district court "must craft an appropriate sanction by considering the complete range of sanctions and weighing the sanction in light of the full record in the case." *Nagy v. Dist. Ct.*, 762 P.2d 158, 161 (Colo. 1988).

6

¶ 15    Although district courts have "broad discretion" in imposing sanctions, it is not unbounded. *Beeghly v. Mack*, 20 P.3d 610, 614 (Colo. 2001). The district court should "impose 'the least severe sanction that will ensure there is full compliance with [its] discovery orders'" and is commensurate with the prejudice caused to the opposing party. *People v. Lee*, 18 P.3d 192, 197 (Colo. 2001) (quoting *People v. Cobb*, 962 P.2d 944, 949 (Colo. 1998)).

¶ 16    The harshest sanction a court can impose is dismissal of the case. *Pinkstaff*, 211 P.3d at 703. Dismissal is appropriate only in the "extreme circumstances," *id.*, when there is "willful or deliberate disobedience of discovery rules, flagrant disregard of a party's discovery obligations, or a substantial deviation from reasonable care in complying with those obligations," *Prefer v. PharmNetRx, LLC*, 18 P.3d 844, 850 (Colo. App. 2000) (citing *Nagy*, 762 P.2d at 161). *Compare Lewis v. J.C. Penney Co.*, 841 P.2d 385, 387 (Colo. App. 1992) (holding that a failure to pay fees was not grounds for dismissal where the failure was not willful or in bad faith), *with Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 571 (Colo. 2009) (Because "the nondisclosure in this case was so

extensive that the parties and the water court had virtually no specific information," it merited dismissal of the case.), *and Sheid v. Hewlett Packard*, 826 P.2d 396, 399 (Colo. App. 1991) (dismissal appropriate where the plaintiff refused to comply with three orders directing the plaintiff to sign medical releases despite the tribunal's efforts to stay the proceedings pending compliance).

¶ 17    The district court's findings of fact and witness credibility determinations may not be disturbed on appeal unless they are clearly erroneous and lack support in the record, and we may not substitute our own findings of fact for those of the trial court. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1383-84 (Colo. 1994).

### B.    "Manipulation" of Website Evidence

¶ 18    Because we affirm the court's termination of the case, we could simply conclude that any error committed by the court in its first sanction order is harmless.  *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties."); *see also People in Interest of R.J.*, 2019 COA 109, ¶ 22 (noting that an error affects a substantial right if it can be

8

said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself). But the court's findings and analysis in the first order support the cumulative violations discussed in the second order.

### 1. The Court's First Sanction Order

¶ 19 Ringba sought termination of the case on March 31, 2023, because it needed the source code for plaintiff's reconstructed April 5, 2020 website for testing and because plaintiff untimely produced a January 22, 2020 call (January 2020 call) that plaintiff's counsel had in their possession since at least April 2022. The January 2020 call was between O'Hare and Yevgeni Malosev (Malosev), a key computer programmer who worked for the company. In it, O'Hare and Malosev discussed the "non-existence of any time constraints to downloading the list," which rebutted plaintiff's theory that Young manipulated the website to obtain the complete List. By the time of the April 17 hearing, plaintiff had produced some of the reconstructed website's source code that apparently allowed Ringba to test it.

¶ 20    At the April 17 discovery hearing, Gianturco and Malosev conducted demonstrations of the website.  Gianturco demonstrated that he was able to download the complete List without selecting any date range, manipulating any parameters, or agreeing to any terms and conditions.  Malosev performed his own demonstration of the reconstructed website.

¶ 21    In an April 25, 2023 order, the court declined to terminate the case but prohibited plaintiff's expert, Frankovitz, from testifying at trial.  The court found plaintiff's first counsel and the agent of plaintiff's first counsel,[2] were grossly negligent in their explanations as to why the January 2020 call was not produced to Ringba until March 2023.

¶ 22    It also found Frankovitz "reckless in pressing the argument and opinion that Mr. Young manipulated the website to download the entire list."  The court laid out the timeline of events in detail:

[2] Plaintiff had two sets of counsel, the second entering their appearances in December 2022.  The record does not include a motion or notice indicating the withdrawal of plaintiff's first counsel.

- In April 2022, O'Hare complied with his discovery obligation and turned over about fifteen boxes of materials to his then counsel, which included the January 2020 call.

- In July 2022, Frankovitz was given access to the website with a "basic subscriber" account, which was supposedly what Young had used when he accessed the website to manipulate and download the complete List.

- In October 2022, Frankovitz notified plaintiff that he could not replicate what Young had done because he downloaded the complete List without any date restriction and without manipulating the website.

- Later in October 2022, Frankovitz was sent new access credentials that enabled him to replicate the date restriction.

- Also in October 2022, O'Hare sent an email to Frankovitz with a copy of the January 2020 call, but he represented in the body of the email that, despite the discussion in the call, Young's "download was limited to 30 days."

11

- The day after Frankovitz received O'Hare's email Frankovitz issued his expert report opining that Young had manipulated the website to gain access to the complete List.

- In January 2023, O'Hare testified at his deposition that his "personal knowledge" of Young's manipulation of the website was based on Frankovitz's report and a download log that the court found showed nothing more than Young conducting four downloads in four minutes.

- In March 2023, Malosev testified at his deposition that he was "mistaken" in thinking there were functional time restrictions on the April 5, 2020 version of the website but gave no explanation as to why he made that error.

¶ 23  Based on these findings, the court concluded that "Mr. Frankovitz, in forming his opinion, relied on [O'Hare's] 'memory' about the time restrictions that existed on the site on April 5, 2020.

Meanwhile [O'Hare] testified that he has relied on Mr. Frankovitz's opinion in asserting that Mr. Young manipulated the website."[3]

¶ 24    Given the computer demonstration and Frankovitz's doubt that he had access to the April 5, 2020 website for his tests, he would "no longer be opining that Mr. Young manipulated the website when he downloaded the entire list." In prohibiting Frankovitz from testifying altogether, though, the court reasoned, "Mr. Frankovitz embraced his original opinion based on not much more than the word of plaintiff's principal and primary software programmer, Mr. Malosev. I further find that he is now abandoning this opinion, again based on the word of these two men." The court also ordered that plaintiff could not make mention at trial of the April 5, 2020 website that plaintiff had reconstructed, both as a sanction and because of its late disclosure.

---

[3] The court erroneously referred to Young when, based on context, it meant O'Hare. Although plaintiff disputes the characterization of the testimony and actions, it does not dispute that the court meant to refer to O'Hare.

## 2.    Analysis

¶ 25    We conclude that the court's sanction was supported by evidence in the record and not an abuse of discretion.

¶ 26    Plaintiff raises four arguments contending the court abused its discretion: (1) O'Hare reasonably relied on his computer programmer in asserting that the April 5, 2020 website had a date restriction component, and Frankovitz relied on other information besides the January 2020 call; (2) by early January 2023, the parties had abandoned plaintiff's website manipulation theory; (3) the court had made findings that the delay in updating Frankovitz's opinion had been substantially justified, and Ringba was not prejudiced; and (4) the court's sanction was too extreme, as it should have allowed Frankovitz to testify to his modified opinion. We are not persuaded by any of these arguments.

¶ 27    First, the court's findings that Frankovitz relied solely on O'Hare and Malosev for his manipulation opinion is supported by the mere fact that Frankovitz was so uncomfortable with his assertions, he withdrew his opinions on that basis.  Both O'Hare and Malosev testified at their depositions that the source code for

14

the April 5, 2020 website "doesn't exist," suggesting that Frankovitz did not test the version of the website used by Young before issuing his opinion in October 2022.  And O'Hare's reliance on his key programmer, no matter how reasonable, is flawed.  Plaintiff still does not account for how Malosev was mistaken when he said there was a date restriction at the time Young accessed the April 5, 2020 website.

¶ 28    Second, the April 5, 2020 source code remained relevant to the terms and conditions theory, even if plaintiff had abandoned its manipulation theory.  At a January 2023 hearing, plaintiff's counsel said the manipulation evidence "shows motive, it shows intent, it shows what Mr. Young was really after," to which the court said, "So, it's totally relevant," and plaintiff's counsel responded affirmatively.  Ringba's counsel said the April 5, 2020 source code was relevant because "to input dates or not input dates and download specific lists off of [plaintiff's] website" would mean that the "glitch [was] due to Plaintiff's error, not something that [was] a fault of Defendants" and because Ringba did not improperly access

15

the information, then this evidence would go to whether the List was a trade secret.

¶ 29    Third, even though the court made findings in an April 2, 2023 order that plaintiff's late disclosure of the April 5, 2020 reconstructed website was substantially justified, it was justified in coming to the opposite conclusion in its April 23 order based on the evidence and website demonstrations presented at the April 17 hearing.  Between the late disclosures of the January 2020 call and Ringba expending attorney fees and resources on its expert to defend against Frankovitz's withdrawn opinion, the court did not abuse its discretion finding that plaintiff's actions had prejudiced Ringba.  *See Ranger Ins. Co. v. Dist. Ct.*, 647 P.2d 1229, 1231 (Colo. 1982) (the court has the inherent authority to revisit and reverse its prior rulings).

¶ 30    Finally, even though there is case law that supports an expert being allowed to testify despite an erroneous opinion, given that Frankovitz had already withdrawn a significant portion of his opinion and that the court had found that Frankovitz and O'Hare were reckless in pursuing that opinion, the court's sanction

foreclosing Frankovitz's testimony altogether was not an abuse of discretion. This is especially true when, as here, the reckless finding was, in part, based on credibility assessments, to which we are bound. *See M.D.C./Wood, Inc.*, 866 P.2d at 1383-84. Thus, we discern no abuse of discretion.

### C. Termination of the Case

#### 1. Additional Facts

¶ 31 After issuing the April 25 order, the court held a status conference on May 4. Ringba again moved for sanctions against plaintiff for the late disclosure of documents showing Young had permission to download the List. The court ordered plaintiff to explain in writing its continued belated disclosure of documents. In response to the court's order, plaintiff filed an explanation, which attached additional unproduced screenshots of its web application and made new arguments related to those documents.

¶ 32 After plaintiff's production of the screenshots, Ringba requested another hearing, which was held on May 11. At that hearing, O'Hare admitted that he and Malosev had had access to the original website's backend source code (different from the source code it provided for testing of the reconstructed website)

17

since the start of litigation. Gianturco testified that the screenshot giving Young permission to download the List was a "smoking gun" that would have "completely changed" his report and assisted in developing his opinions.[4] The district court issued an order the next day, May 12, terminating the case in its entirety.

¶ 33    The court made extensive findings in its order as to why it imposed the sanction to terminate the case. It found that based on the testimony at the May 11 hearing and the newly disclosed documents it reviewed, "plaintiff could no longer credibly claim that it had disclosed all relevant evidence in their possession." It also concluded that plaintiff was producing discovery in "dribs and drabs." And most significant, it found that O'Hare and Malosev's violation of the discovery rules was "an attempt to increase their chances of prevailing at trial." The court acknowledged plaintiff had legitimate grievances with Ringba using plaintiff's List for Ringba's

---

[4] Gianturco had opined that because of limited information provided by plaintiff, the company could not prove that Young downloaded the complete List by manipulating the website. The new evidence ostensibly would have changed his opinion to a more definitive stance that Young had not manipulated the website when downloading the complete List.

own product. But, the court reasoned, plaintiff had an obligation under law to produce all relevant information, "even if that evidence would help the other side," and plaintiff had "until too late, disregarded that law completely." As a result, it terminated the case.

## 2. Analysis

¶ 34 We acknowledge that dismissal is the severest sanction a court can impose, and therefore, as mentioned, it should be done only "for willful or deliberate disobedience of discovery rules, flagrant disregard of a party's discovery obligations, or a substantial deviation from reasonable care in complying with those obligations." *Prefer*, 18 P.3d at 850. And while sanctions relating to discovery should be narrowly tailored to advance resolution of the action on the merits, "when faced with extensive nondisclosure and a wholesale failure to prosecute a case, a trial court does not abuse its discretion in dismissing the action." *Pinkstaff*, 211 P.3d at 703.

¶ 35 Plaintiff contends the court erred by imposing the severest sanction of dismissal because (1) the sanction is not supported by clear and convincing evidence; (2) plaintiff produced all relevant

19

source code; (3) the late productions were cumulative of already produced evidence; and (4) the "new" evidence was not a "smoking gun" disproving plaintiff's case. We reject them all.

¶ 36 First, plaintiff misstates the applicable standard of review. Plaintiff cites *Xyngular v. Schenkel*, 890 F.3d 868, 873–74 (10th Cir. 2018), to contend that we review a court's imposition of a sanction for clear and convincing evidence. But we are not bound by the federal courts' standard, *see Kovac v. Farmers Ins. Exch.*, 2017 COA 7M, ¶ 19, and our supreme court — to which we are bound — has repeatedly reviewed discovery sanctions for an abuse of discretion, *see Warden v. Exempla, Inc.*, 2012 CO 74, ¶ 17. Finally, plaintiff has not cited, nor are we aware of, any Colorado authority imposing a clear and convincing evidence standard to a court's imposition of discovery sanctions.

¶ 37 Second, plaintiff's description of the technical and complex issues that arise when one party asks for the other side's source code, as discussed in *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. C 11-1846 LHK (PSG), 2012 WL 1595784 (N.D. Cal. May 4, 2012) (unpublished order), may be accurate. But in this circumstance, it

20

was not the technical issues (or entirely the technical issues) that gave rise to plaintiff's nondisclosure. The court found that plaintiff had "ready access" to the information from the beginning of the litigation. And it reasoned that Ringba's discovery requests had been "broad" and "all-inclusive" so that all information about the website should have been turned over. At the May 11 hearing, Gianturco said that he had not seen information like metadata tables, configuration files, and backend source code, which should have been produced. He explained that the source code for the website is not sufficient to understand whether the restrictions plaintiff claims it put on its website (i.e., a date restriction and terms and condition agreement) were properly communicated to the backend source code.

¶ 38　　Third, the evidence was not cumulative of already produced evidence as there was (1) the previously discussed January 2020 call; (2) the failure to provide the version of the "plugins" used by plaintiff, as that would affect the functionality of the website at the time of April 5, 2020; and (3) the "metadata tables and configuration files" — which some or all were never produced —

that would have been needed to generate the screenshots that Malosev provided and were discussed at the May 11 hearing. And the continual late disclosures dramatically affected the case, such as the January 2020 call that was so material that plaintiff's expert withdrew a significant portion of his opinion or the screenshots evidencing that Young had permission to download the List. Such dramatic effects on the course of litigation cannot be considered cumulative of evidence that had already been produced.

¶ 39     Finally, plaintiff contends that the court abused its discretion terminating the case because the belated disclosures, such as the screenshots, were not a "smoking gun" disproving that Young could not have downloaded the List from the website without agreeing to the terms and conditions. But plaintiff's contention misses the point. Discovery sanctions under C.R.C.P. 37 do not require a finding that plaintiff would have not prevailed on the merits. Instead, the rules are intended to keep parties honest so that as much relevant evidence as possible is part of coming to a resolution of the dispute on the merits. The May 11 order directly addressed this point.

¶ 40    The court had already found plaintiff's first counsel grossly

negligent for failing to disclose the January 2020 call and had also

found O'Hare and Frankovitz reckless for opining that the date

restriction was in place and that Young manipulated the website on

April 5, 2020, without verification.  The court reasoned, though,

that the completely nondisclosed material or belated productions

were often helpful to Ringba's defense or could have significantly

narrowed the scope of the litigation, thereby avoiding time,

resources, and attorney fees.  The district court sanctioned plaintiff

for late disclosures not once but twice because it found that plaintiff

had "ready access to all sorts of data directly relevant to this case"

and that "Mr. O'Hare and Mr. Malosev completely disregarded their

legally required discovery obligations until just recently in an

attempt to increase their chances of prevailing at trial."

¶ 41    Therefore, on this record, we cannot say the court abused its

discretion by terminating plaintiff's case.[5]

_____

[5] We acknowledge that plaintiff did not fail completely to prosecute
its case, which was part of the facts giving rise to the supreme court
affirming the dismissal in *Cornelius v. River Ridge Ranch
Landowners Ass'n,* 202 P.3d 564, 571 (Colo. 2009).  But here,

### III.    Summary Judgment

¶ 42    Plaintiff contends that the district court erred by granting summary judgment because (1) genuine issues of material fact existed as to its breach of contract claim, and (2) the economic loss rule did not bar its fraudulent misrepresentation claim.  Even if the court erred in granting summary judgment in Ringba's favor on both claims, the sanction order terminating the case renders any error harmless.

¶ 43    There is no reason to believe that the court would have decided against terminating the whole case if these two claims were pending at the time of the May 11 hearing and May 12 order.  The court's findings that plaintiff and plaintiff's agents were reckless, along with the findings of gross negligence of plaintiff's first counsel, the continual discovery violations, and the materiality of the nondisclosed information or belated productions were just as relevant to the breach of contract and fraudulent misrepresentation claims.  Plaintiff has provided no rationale for why the court would

---

where discovery was material and rebutted the very theories plaintiff asserted, prosecuting the case without full disclosure can be just as harmful as failing to prosecute the case.

not have also terminated these claims as part of its May 12 order given the state of the record. Accordingly, even assuming the court erred by granting summary judgment, any error was harmless. *See Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 697 (Colo. App. 2006).

## IV. Conclusion

¶ 44    The judgment is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.